UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEROME CLYDE SMITH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-842-WBV-JVM** |
| **BP EXPLORATION & PRODUCTION, INC., ET AL.** | **SECTION: D (1)** |

### ORDER and REASONS

Before the Court is a Motion to Disqualify and/or Recuse District Court Judge Wendy Vitter, filed by plaintiff, Jerome Smith.[1] Defendants, BP Exploration & Production Inc. and BP America Production Company (collectively, "BP"), oppose the Motion,[2] and Smith has filed a Reply.[3] After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED**.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the *Deepwater Horizon* oil spill in the Gulf of Mexico in 2010 and the subsequent cleanup efforts of the Gulf Coast. On January 11, 2013, while presiding over the multidistrict litigation arising out of the *Deepwater Horizon* incident, United States District Judge Carl J. Barbier approved the *Deepwater*

---

[1] R. Doc. 16.
[2] R. Doc. 17.
[3] R. Doc. 23. Smith's original Motion for Leave to File Reply Memorandum, filed on November 9, 2022, was marked as deficient by the Clerk's Office for failure to provide a proposed pleading as an attachment to the motion for leave. *See*, R. Doc. 19. Smith was given seven calendar days to remedy the deficiency. On November 16, 2022, Smith filed an Amended Motion for Leave to File Reply, but it, too, was marked as deficient, again for failure to provide a proposed pleading as an attachment to the motion for leave. *See*, R. Doc. 20. On November 17, 2022, Smith was given an additional seven calendar days, or until November 25, 2022, to remedy the deficiency. Smith then filed a third Motion for Leave to File Reply on November 25, 2022, which the Court granted. *See*, R. Docs. 21 & 22.

*Horizon* Medical Benefits Class Action Settlement Agreement (the "MSA").[4] The MSA includes a Back-End Litigation Option ("BELO") that permits certain class members to sue BP for Later-Manifested Physical Conditions ("LMPC's").[5] The MSA defines a LMPC as a:

> physical condition that is first diagnosed in a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER after April 16, 2012, and which is claimed to have resulted from … exposure to oil, other hydrocarbons, or other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or exposure to dispersants and/or decontaminants used in connection with the RESPOSE ACTIVITIES, where such exposure occurred on or prior to … April 16, 2012 for CLEAN-UP WORKERS.[6]

Certain individuals, referred to as "B3" plaintiffs, either opted out of or were excluded from the MSA.[7] Judge Barbier previously described the BELO and B3 cases in similar terms, explaining that, "Both allege personal injuries or wrongful death due to exposure to oil or other chemicals used during the oil spill response," and that, "[B]oth BELO plaintiffs and B3 plaintiffs must prove that the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response.[8]

In April 2021, Judge Barbier severed the B3 cases from the MDL, and those cases were reallotted among the judges of this court. Although not addressed by either party in their briefs or prior pleadings, it appears that Jerome Smith opted out

---

[4] *See, Brown v. BP Expl. & Prod. Inc.*, Civ. A. No. 18-9927, 2019 WL 2995869, at *1 (E.D. La. July 9, 2019) (Africk, J.) (citation omitted).
[5] *Id.*
[6] *Id.*
[7] *See, In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, MDL No. 10-2179, 2021 WL 6053613, at *2 (E.D. La. Apr. 1, 2021) (Barbier, J.).
[8] *See,* R. Doc. 26921 at p. 1 in *In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, MDL No. 10-02179, (E.D. La. Feb. 23, 2021) (Barbier, J.).

of the MSA and filed an individual BELO Complaint on March 30, 2022.[9] Thus, Smith is a B3 plaintiff.

On or about September 28, 2022, this Court granted BP's *Daubert* motions to exclude the plaintiffs' proffered general causation expert, Dr. Jerald Cook, in fifteen B3 cases.[10] Because those plaintiffs then lacked the requisite expert testimony, the Court granted BP's motions for summary judgment and dismissed those cases with prejudice.[11] Less than one month later, Smith filed the instant Motion to Disqualify the undersigned.[12]

In the instant Motion, Smith asserts that the undersigned should be disqualified under 28 U.S.C. § 455(a) because the undersigned's spouse's role as a

---

[9] R. Doc. 1. *See, generally*, R. Docs. 1, 16, & 17.
[10] Dr. Cook issued the same report in each case.
[11] *See, Swanier v. BP Expl. & Prod., Inc.*, Civ. A. No. 17-4644, 2022 WL 4534751 (E.D. La. Sept. 28, 2022); *Brister v. BP Expl. & Prod., Inc.*, Civ. A. No. 17-4652, 2022 WL 4534752 (E.D. La. Sept. 28, 2022); *Lee v. BP Expl. & Prod., Inc.*, Civ. A. No. 17-4407 (E.D. La. Sept. 28, 2022); *Maurras v. BP Expl. & Prod., Inc.*, Civ. A. No. 17-3185, 2022 WL 4534740 (E.D. La. Sept. 28, 2022); *Bengson v. BP Expl. & Prod., Inc.*, Civ. A. No. 17-3210, 2022 WL 4534745 (E.D. La. Sept. 28, 2022); *Hill v. BP Expl. & Prod., Inc.*, Civ. A. No. 17-3252, 2022 WL 4534747 (E.D. La. Sept. 28, 2022); *Fuller v. BP Expl. & Prod., Inc.*, Civ. A. No. 13-5372, 2022 WL 4534737 (E.D. La. Sept. 28, 2022); *Tebbs v. BP Expl. & Prod. Inc.*, Civ. A. No. 17-4606, 2022 WL 4482637 (E.D. La. Sept. 27, 2022); *Cambre v. BP Expl. & Prod. Inc.*, Civ. A. No. 17-3643, 2022 WL 4482616 (E.D. La. Sept. 27, 2022); *Moorer v. BP Expl. & Prod., Inc.*, Civ. A. No. 17-4461, 2022 WL 4482624 (E.D. La. Sept. 27, 2022); *Stewart v. BP Expl. & Prod., Inc.*, Civ. A. No. 17-3613, 2022 WL 4482635 (E.D. La. Sept. 27, 2022); *Evans v. BP Expl. & Prod., Inc.*, Civ. A. No. 17-4326, 2022 WL 5164972 (E.D. La. Sept. 27, 2022); *Foxworth v. BP Expl. & Prod., Inc.*, Civ. A. No. 17-4328, 2022 WL 5164954 (E.D. La. Sept. 27, 2022); *Griffin v. BP Expl. & Prod., Inc.*, Civ. A. No. 17-3258, 2022 WL 5158675 (E.D. La. Sept. 27, 2022); *English v. BP Expl. & Prod. Inc.*, Civ. A. No. 17-4325, 2022 WL 5158669 (E.D. La. Sept. 26, 2022). At least eight other Sections of this Court have reached the same conclusion. *See, e.g.*, *Novelozo v. BP Expl. & Prod. Inc.*, Civ. A. No. 13-1033, 2022 WL 1460103 (E.D. La. May 9, 2022) (Africk, J.); *Johns v. BP Expl. & Prod. Inc.*, Civ. A. No. 17-3304, 2022 WL 1811088, at *2 (E.D. La. June 2, 2022) (Ashe, J.); *Heathington v. BP Expl. & Prod. Inc.*, Civ. A. No. 17-4353, 2022 WL 2986490 (E.D. La. July 28, 2022) (Barbier, J.); *Baggett v. BP Expl. & Prod. Inc.*, Civ. A. No. 17-3030, 2022 WL 4242521 (E.D. La. Sept. 13, 2022) (Guidry, J.); *Reed v. BP Expl. & Prod., Inc.*, Civ. A. No. 17-3603, 2022 WL 3099925 (E.D. La. Aug. 4, 2022) (Milazzo, J.); *Harrison v. BP Expl. & Prod. Inc.*, Civ. A. No. 17-4346, 2022 WL 2390733 (E.D. La. July 1, 2022) (Morgan, J.); *Dawkins v. BP Expl. & Prod., Inc.*, Civ. A. No. 17-3533, 2022 WL 2315846 (E.D. La. June 28, 2022) (Vance, J.); *Davis v. BP Expl. & Prod., Inc.*, Civ. A. No. 17-4664, 2022 WL 2789027 (E.D. La. July 15, 2022) (Zainey, J.).
[12] R. Doc. 16.

member of Congress and subsequent lobbying activities give rise to an appearance of impropriety in favor of the oil and gas industry.[13] Smith also claims that recusal is warranted under 28 U.S.C. § 455(b)(5) because the undersigned and her spouse have a financial interest that may be substantially affected by the outcome of the *Deepwater Horizon* litigation.[14] While not a model of clarity, Smith appears to argue that disqualification is warranted under 28 U.S.C. § 455(b)(5) because the undersigned's spouse lobbies on behalf of other petrochemical companies and, thus, "there is substantial support that your Honor and spouse have a significant financial interest in [the] petrochemical industry."[15]

BP opposes the Motion, asserting that there is no legal basis for disqualification because no court has ever suggested that a federal judge must recuse herself from cases involving an entire industry based on a claim that her spouse, while previously a member of Congress and several years before the judge was appointed, received campaign donations from companies engaged in that industry and took pro-industry positions on legislation.[16] BP also argues that the Motion is untimely because the purported grounds for disqualification – however specious – have been publicly available for many years.[17]

In response, Smith disputes BP's characterization of his Motion to Disqualify, including the timeliness of the motion and his motive for seeking disqualification.[18]

---

[13] R. Doc. 16-1 at pp. 2-11 & 14-19.
[14] *Id.* at pp. 19-20.
[15] *Id.*
[16] R. Doc. 17 at pp. 1-3 & 5-7.
[17] *Id.* at pp. 2 & 9-11.
[18] R. Doc. 23.

## II. LEGAL STANDARD

The Supreme Court has made clear that its "precedents set forth an objective standard that requires recusal when the likelihood of bias on the part of the judge 'is too high to be constitutionally tolerable.'"[19] As explained by another Section of this Court, "A motion to recuse must be strictly construed for form, timeliness, and sufficiency in order to guard against the danger of frivolous attacks on the orderly process of justice."[20] Further, "To be timely, a motion to recuse must be filed as soon as practicable after discovery of the allegedly disqualifying facts."[21]

## III. ANALYSIS

### A. Disqualification Under 28 U.S.C. §§ 455(a) and (b)(5)

Pursuant to 28 U.S.C. § 455(a), "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[22] Section 455(b)(5)(iii) further provides that a judge "shall also disqualify himself" when "He or his spouse . . . [i]s known by the judge to have an interest that could be substantially affected by the outcome of the proceeding."[23] To bring a successful recusal petition under § 455(a), the movant "must (1) demonstrate that the alleged comment, action, or circumstance was of 'extrajudicial' origin, (2) place the offending event into the context of the entire trial,

---

[19] *Williams v. Pennsylvania*, 579 U.S. 1, 4, 136 S.Ct. 1899, 1903, 195 L.Ed.2d 132 (2016) (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009)).
[20] *Danielson v. Winnfield Funeral Home of Jefferson, Inc.*, 634 F.Supp. 1110, 1113 (E.D. La. 1986) (citing authority).
[21] *Id.* at 1114 (citing authority).
[22] 28 U.S.C. § 455(a).
[23] 28 U.S.C. § 455(b)(5)(iii).

and (3) do so by an 'objective' observer's standard.'"[24] According to the Fifth Circuit, "This recusal standard is objective; the relevant inquiry is whether a 'reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality.'"[25] Additionally, "the reasonable person standard in the recusal context contemplates a 'well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person.'"[26]

Smith argues that the undersigned's impartiality can be questioned because she previously worked in her spouse's political campaigns while he was in elected office and before taking the bench, and because the undersigned's spouse, while serving in Congress, took positions supportive of the oil industry and received campaign contributions from oil industry donors.[27] Smith also claims that the undersigned's impartiality can be questioned because the undersigned's spouse works for a law firm that previously represented oil industry clients other than BP in earlier phases of the *Deepwater Horizon* litigation and currently represents other oil industry clients, such that the undersigned has a financial interest in the outcome of this case. Smith offers no evidence of personal bias or prejudice, but simply points to the undersigned's spouse's actions while serving in Congress, and the fact that his current employer represents other oil industry clients. Smith fails to mention that

---

[24] *Casby v. St. Charles Parish Sheriff's Office*, Civ. A. No. 14-1706, 2014 WL 6684947, at *2 (E.D. La. Nov. 25, 2014) (Fallon, J.) (quoting *Andrade v. Chokjnacki*, 338 F.3d 448, 455 (5th Cir. 2003)) (internal quotation marks omitted).
[25] *Trevino v. Johnson*, 168 F.3d 173, 178 (5th Cir. 1999) (quoting *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 800 (5th Cir. 1986)).
[26] *Trevino*, 168 F.3d at 179 (quoting *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995)).
[27] Throughout his pleadings, Smith avers that the crux of the undersigned's spouse's career "has been to champion on behalf of the oil and gas industry." *See,* R. Doc. 16-1 at p. 16. Such statements reflect a fundamental misunderstanding of the role of an elected official.

the undersigned's spouse left his position in Congress almost six years ago. Further, statements attributed to the undersigned occurred well over a decade ago.

For guidance on this issue, the undersigned relies on the Committee on Codes of Conduct Advisory Opinion No. 24, which addresses potential conflicts *of a judge* upon resignation from a law firm. While the Committee points out that the judge should take into consideration various circumstances, the Committee "recommends that judges consider a recusal period of at least two years . . . ."[28] In his Motion, Smith seeks the undersigned's recusal for matters related to her spouse's employment in Congress well over five years ago. Smith claims that, "The fact that BP contributed to [the undersigned's spouse's] political career is, in itself, sufficient to warrant refusal [sic], let alone [the undersigned's spouse's] involvement in passing laws and regulations favoring BP."[29] The undersigned's spouse's campaigns—all of which took place well over five years ago—were supported by thousands of contributors, both individuals and entities. Further, the undersigned's spouse was involved in, voted for, or voted against countless laws and regulations during his time in elected office, both at the state and national level. Smith's reliance on contributions made to the undersigned spouse's campaigns and his legislative service from years earlier to support disqualification is without support, and arguably absurd.

The Court further finds that the cited association is too attenuated to be of concern to an objective observer. There is no indication that the undersigned's spouse, or his current law firm (of which he is "of counsel" and not an

---

[28] Guide to Judiciary Policy, Vol. 2B, Ch. 2, Advisory Opinion No. 24.
[29] R. Doc. 23 at p. 7.

equity partner with a financial interest in the firm), currently represent any oil industry clients in the *Deepwater Horizon* litigation, or that the undersigned has any financial or other interest that could be substantially affected by the outcome of this case. The Court also finds instructive the Committee on Codes of Conduct Advisory Opinion No. 107, Disqualification Based on Spouse's Business Relationships. While Advisory Opinion No. 107 provides broad guidance, it also states that, "As a general proposition, the fact that the spouse or the spouse's business has a business relationship with an entity that appears in an unrelated proceeding before the judge usually does not require the judge's recusal."[30] Finally, as Smith pointed out, the undersigned has never hesitated to: (1) disclose matters to all parties that could give the appearance of impropriety; and (2) disqualify herself pursuant to 28 U.S.C. § 455 or in matters appropriate for disqualification pursuant to the Code of Conduct for United States Judges. This, however, is not one of those matters, and the undersigned has no hesitation in unequivocally stating that she can be fair and impartial in this matter. Given these facts, a well-informed, thoughtful, and objective observer would not question the undersigned's impartiality so as to implicate 28 U.S.C. § 455(a) or (b)(5)(iii) or the Code of Conduct for United States Judges.

### B. Timeliness of the Motion

As previously mentioned, a motion to disqualify must be filed timely, which is

---

[30] Guide to Judiciary Policy, Vol. 2B, Ch. 2, Advisory Opinion No. 107.
[31] *Danielson v. Winnfield Funeral Home of Jefferson, Inc.*, 634 F.Supp. 1110, 1114 (E.D. La. 1986) (citing authority). *See*, *Hill v. Schilling*, 495 Fed.Appx. 480, 483-84 (5th Cir. 2012) (upholding denial of recusal motion as untimely).

"as soon as practicable after discovery of the allegedly disqualifying facts."[31] The timeliness requirement preserves the statute's integrity by discouraging bad faith manipulation of the federal judiciary's ethical obligations for litigious advantage.[32] "It also prevents litigants from taking 'the heads-I-win-tails-you-lose position of waiting to see whether they win and if they lose moving to disqualify a judge who voted against them.'"[33]

Here, the timing of Smith's Motion to Disqualify cannot be overlooked. It came months after the case was reallotted to this section of court, is based on facts that are generally public knowledge, and, perhaps most significantly, was filed less than one month after the undersigned granted several motions for summary judgment in similar cases, all of which was known by Smith.[34] It is particularly striking that the Motion was not filed during the pendency of this case prior to the undersigned's recent rulings, referenced above. As such, Smith's assertion that "there have been no adverse judgments entered"[35] either ignores or fails to address the Court's recent rulings in those cases.

Additionally, it strains credulity that Smith's attorneys had no knowledge of the undersigned's spouse's service as a member of Congress until one month after this Court granted motions for summary judgment dismissing other B3 cases. Smith makes no attempt to explain how or why his attorneys only just learned or acquired this information, all of which is and has been publicly available for

---

[32] *Delesdernier v. Porterie*, 666 F.2d 116, 121 (5th Cir. 1982).
[33] *Carpenter v. BP Expl. & Prod. Inc.*, Civ. A. No. 17-3645, 2022 WL 2800014, at *4 (E.D. La. July 14, 2022) (Ashe, J.) (quoting *Schurz Commc'ns, Inc. v. FCC*, 982 F.2d 1057, 1060 (7th Cir 1992)).
[34] *See, supra*, note 11, R. Doc. 17 at pp. 1-2, & R. Doc. 17-1.
[35] R. Doc. 23 at p. 4.

many years, other than conceding that his investigation of the undersigned was prompted by the Court's rulings in those cases. Indeed, Smith relies almost exclusively on public records to support his Motion, many of which are over a decade old.[36] Considering the totality of the circumstances, and coming on the heels of the undersigned's recent rulings granting summary judgment in favor of BP, Smith's Motion to Disqualify appears to be an attempt to manipulate the integrity of the judicial system.

## IV. CONCLUSION

A judge has an affirmative duty not to disqualify herself unnecessarily. Because Smith raises no compelling or persuasive grounds for disqualification here, and, importantly, because the undersigned can perform her duties in this matter fairly, impartially, and diligently--obligations she takes seriously-- it is unnecessary and, indeed, would be improper for the undersigned to disqualify herself.

Accordingly, for the reasons set forth above, **IT IS HEREBY ORDERED** that the Motion to Disqualify and/or Recuse District Court Judge Wendy Vitter[37] is **DENIED.**

New Orleans, Louisiana, December 2, 2022.

**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

[36] *See, generally*, R. Doc. 16-1.
[37] R. Doc. 16.