UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEROME SMITH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-842** |
| **BP EXPLORATION & PRODUCTION, INC., ET AL.** | **SECTION: D (1)** |

## ORDER AND REASONS

Before the Court is BP's Motion for Summary Judgment filed by Defendants BP Exploration & Production Inc. and BP America Production Company (collectively "Defendants").[1] Plaintiff Jerome Smith ("Plaintiff") opposes the Motion.[2] Defendants have filed a Reply in support of their Motion.[3] Also before the Court is an Amended Rule 56(d) Motion to Deny or Defer Briefing on BP's Motion for Summary Judgment filed by the Plaintiff.[4] The Defendants oppose the Motion.[5]

After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **GRANTS** the Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Rule 56(d) Motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

This case arises from the *Deepwater Horizon* oil spill in the Gulf of Mexico in 2010 and the subsequent cleanup efforts of the Gulf Coast. On January 11, 2013, United States District Judge Carl J. Barbier, who presided over the multidistrict

---

[1] R. Doc. 40.
[2] R. Doc. 50.
[3] R. Doc. 49.
[4] R. Doc. 50.
[5] R. Doc. 52.

litigation arising out of the *Deepwater Horizon* incident, approved the *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement (the "MSA").[6] The MSA allows for certain individuals, referred to as "BELO"[7] plaintiffs, to seek compensation for injuries resulting from spill-related exposures that were first diagnosed after April 16, 2012.[8] Plaintiff Jerome Smith is a BELO plaintiff.[9]

Plaintiff filed this individual action against Defendants on March 30, 2022 to recover for injuries allegedly sustained as a result of the oil spill.[10] For approximately four months in 2010, Plaintiff worked as a cleanup worker, tasked with cleaning up oil and oil-covered debris from the beaches and coastal areas in Mississippi.[11] Plaintiff alleges that Defendants' negligence in both causing the Gulf oil spill and subsequently failing to properly design and implement a clean-up response caused him to suffer injuries including chronic rhinitis.[12] Specifically, Plaintiff seeks to recover economic damages, personal injury damages—including damages for past and future medical expenses and for pain and suffering—and costs.[13]

The original deadline for Plaintiff to provide his expert reports to the Defendants was March 1, 2023.[14] Shortly before that deadline, Plaintiff moved for an extension of all outstanding pre-trial deadlines, including the deadline to produce

---

[6] *See Brown v. BP Expl. & Prod. Inc.*, Civ. A. No. 18-9927, 2019 WL 2995869, at *1 (E.D. La. July 9, 2019) (Africk, J.) (citation omitted).
[7] "BELO" is short for "Back End Litigation Option."
[8] *See In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2021 WL 6053613, at *2 (E.D. La. Apr. 1, 2021).
[9] R. Doc. 1 at ¶ 4.
[10] *Id.*
[11] *Id.* at ¶¶ 2, 12.
[12] *Id.* at ¶¶ 16, 28.
[13] *Id.* at ¶ 30.
[14] *See* R. Doc. 18 at p. 2.

expert reports.[15] The Court, finding that good cause existed to warrant an extension, gave Plaintiff, *inter alia*, a thirty-day extension, *i.e.*, until March 31, 2023, on his deadline to provide expert reports to the Defendants.[16] Plaintiff failed to provide expert reports by the deadline. Instead, Plaintiff filed yet another Motion to Extend Case Management Deadlines, requesting an additional ninety-day extension on his deadline to provide an expert report.[17] The Court denied the Motion, finding that Plaintiff had failed to provide good cause for another continuance in this matter.[18]

Defendants filed the instant Motion for Summary Judgment on May 1, 2023, asserting that they are entitled to summary judgment because Plaintiff has not produced an expert report or any expert testimony in support of his exposure-related health complaints—a necessary requirement under controlling Fifth Circuit precedent—and, thus, cannot prove that his alleged medical conditions were caused by his exposure to substances related to the *Deepwater Horizon* oil spill.[19]

In response, Plaintiff filed an Amended Rule 56(d) Motion to Deny or Defer Briefing on BP's Motion for Summary Judgment seeking a denial or deferment of the Defendants' Motion.[20] Plaintiff contends that he needs additional time to review discovery in this case so that he may proffer the required expert opinion testimony on his behalf.[21] Specifically, Plaintiff alleges that information contained in materials obtained from BP's contractors, Exponent and CTEH, is "essential for [his] experts'

---

[15] *See* R. Doc. 26.
[16] *See* R. Doc. 33.
[17] *See* R. Doc. 35.
[18] *See* R. Doc. 39.
[19] *See* R. Doc. 40-1.
[20] *See* R. Doc. 50.
[21] *See* R. Doc. 50-1.

ability to tabulate a harmful level of exposure" and that his expert requires more time to review this discovery.[22] Plaintiff incorporates the same arguments that he raised in his prior Motion to Extend Case Management Deadlines which was denied by the Court.[23] Plaintiff also attaches an affidavit from Dr. Ranajit Sanu ("Dr. Sanu") explaining the importance of the Exponent documents to Plaintiff's case and opining that the specific *Deepwater Horizon* oil spill exposure data collected by Exponent is inaccurate and flawed.[24] Dr. Sanu contends that he requires additional time to review the Exponent documents to determine the failures and limitations of the sampling data collected after the oil spill.[25] Lastly, Plaintiff provides orders from several other courts in which similar B3 and BELO plaintiffs have been granted extensions on their deadlines to provide expert reports; none of the cited cases concern the granting of a Rule 56(d) motion, however.[26]

The Defendants filed both a reply memorandum in support of their own Motion for Summary Judgment[27] as well as a response in opposition to the Plaintiff's Rule 56(d) Motion, in which the Defendants incorporated by reference the arguments set forth in their reply.[28] Defendants argue that the Plaintiff should not be granted any more time to provide expert reports on his behalf because Plaintiff fails to provide any case-specific reason as to why a continuance is necessary.[29] Defendants also

---

[22] *See id.* at p. 10.
[23] *See id.* at p. 9.
[24] *See* R. Doc. 50-3.
[25] *See id.* at ¶ 26.
[26] *See* R. Doc. 50-2; R. Doc. 51-1; R. Doc. 56-1.
[27] R. Doc. 49.
[28] R. Doc. 52.
[29] *See* R. Doc. 49 at pp. 2–4.

contest Plaintiff's contention that the Exponent documents are relevant to the Motion for Summary Judgment, arguing that the Exponent documents have no bearing on the general causation inquiry because "data from the response is not needed for a general causation opinion."[30] Accordingly, Defendants contend that the Court should grant their Motion for Summary Judgment and deny the Plaintiff's Amended Rule 56(d) Motion to Deny or Defer Briefing on BP's Motion for Summary Judgment.

## II.   LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[31] When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[32] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[33] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[34]

---

[30] *See id.* at p. 6.
[31] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[32] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).
[33] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[34] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson*, 477 U.S. at 248).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[35] The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[36] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[37] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[38]

Under Federal Rule of Civil Procedure 56(d), a court may defer or deny a motion for summary judgment, or allow additional time for discovery, if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."[39] A party moving under Rule 56(d) must "show (1) why [he] needs additional discovery and (2) how that discovery will create a genuine

---

[35] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).
[36] *Id.* at 1265.
[37] *See Celotex*, 477 U.S. at 322–23.
[38] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).
[39] Fed. R. Civ. P. 56(d).

issue of material fact."[40]  The moving party cannot "simply rely on vague assertions that additional discovery will produce needed, but unspecified facts."[41]  "Instead, the movant 'must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will *influence the outcome of the pending summary judgment motion.*'"[42]  The movant "must also have diligently pursued discovery."[43]

## III.  ANALYSIS

The burden of proof is on the BELO plaintiffs to prove that "the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response."[44]  To prove causation, BELO plaintiffs are required to provide reliable expert testimony.[45]  "A plaintiff in such a case cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation."[46]

Courts use "a two-step process in examining the admissibility of causation evidence in toxic tort cases."[47]  First, a court must determine whether general causation exists.[48]  "General causation is whether a substance is capable of causing a

---

[40] *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (citation omitted).
[41] *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (per curiam) (quotations and citation omitted).
[42] *Byrd v. BP Expl. & Prod., Inc.*, No. 22-30654, 2023 WL 4046280, at *2 (5th Cir. June 16, 2023) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quotations and citation omitted)).
[43] *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 816 (5th Cir. 2017) (quotations and citation omitted).
[44] *In re Oil Spill*, 2021 WL 6053613, at *11.
[45] *See, e.g., Seaman v. Seacor Marine, LLC*, 326 Fed. Appx. 721, 723 (5th Cir. 2009).
[46] *Id.* (citing *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)).
[47] *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007); *accord Byrd*, 2023 WL 4046280, at *2.
[48] *Knight*, 482 F.3d at 351.

particular injury or condition in the general population."[49]  Second, if the court finds that there is admissible general-causation evidence, "the district court must determine whether there is admissible specific-causation evidence."[50]  "[S]pecific causation is whether a substance caused a particular individual's injury."[51]  If the court finds that there is no admissible general causation evidence, it need not consider the issue of specific causation.[52]

To establish general causation, a causation expert must identify "the harmful level of exposure to a chemical" at which physical symptoms manifest.[53]  As this Court has explained in other "B3" cases, nearly every chemical on Earth may be toxic or even fatal at a certain level of exposure.[54]  Thus, causation experts determine not only *whether* a chemical is capable of causing certain health effects, but *at what level* of exposure do those health affects appear.  Experts refer to this inquiry with the maxim, *dosis sola facit venenum*, or "the dose determines the poison."[55]  This analysis is also referred to in the Bradford Hill factors as the dose-response relationship.[56]

---

[49] *Id.* (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997)).
[50] *Id.*
[51] *Id.*
[52] *Id.* ("Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence.").
[53] *Allen*, 102 F.3d at 199.
[54] *See, e.g.*, *Kaoui v. BP Expl. & Prod., Inc.*, No. CV 17-3313, 2023 WL 330510, at *6 (E.D. La. Jan. 12, 2023) (Vitter, J.).
[55] *See id.* Such knowledge dates back to at least the time of Paracelsus, the great sixteenth-century Swiss philosopher and scientist, who remarked that "[s]olely the dose determines that a thing is not a poison." *See* Joseph Borzelleca, *Paracelsus: Herald of Modern Toxicology*, 53 Toxicological Scis. 2, 4 (1999).
[56] *See Kaoui*, 2023 WL 330510, at *6.  After evidence demonstrating an association between a particular chemical and a disease has been established, the Bradford Hill criteria are used to determine whether a causal relationship exists. *See id.* at *2.

In recognition of the importance of this step of the causation analysis, the American Medical Association's *Guide to the Evaluation of Disease and Injury Causation* states that determining "whether the estimated dose was sufficient to explain observed clinical effects known to be associated with the agent in question" is the "most critical phase of the hazard evaluation process."[57]  Relatedly, the Fifth Circuit states that this detail is one of the "minimal facts necessary to sustain the plaintiff's burden in a toxic tort case."[58]  A plaintiff must provide reliable expert testimony establishing the requisite level of exposure necessary to cause each alleged physical harm.[59]  Accordingly, failure to properly identify the level of exposure to a particular chemical at which harmful effects occur necessarily renders a general causation opinion to be unreliable and, thus, inadmissible.[60]

Plaintiff has not provided any admissible expert testimony on general causation in this case.  A review of the timeline of this matter is helpful.  Plaintiff filed his case on March 30, 2022.[61]  The Court's initial Scheduling Order included a deadline of March 1, 2023 for Plaintiff to exchange its expert reports.[62]  Plaintiff

---

[57] *See id.* at *6 (citations omitted).
[58] *Allen*, 102 F.3d at 199; *accord McGill v. BP Expl. & Prod., Inc.*, 830 Fed. Appx. 430, 433 (5th Cir. 2020) (affirming exclusion of expert's opinions where "none [of the studies on which the expert relied] provide conclusive findings on what exposure level of Corexit is hazardous to humans.").
[59] *Allen*, 102 F.3d at 195; *see also McGill*, 830 Fed. Appx. at 433 n.1 (excluding expert testimony where the studies relied upon by expert "did not address what level of exposure would be unsafe for humans or *what specific illnesses* that exposure may cause.") (emphasis added).
[60] *See Dawkins v. BP Expl. & Prod., Inc.*, No. CV 17-3533, 2022 WL 2315846, at *6  (E.D. La. June 28, 2022) (Vance, J.), *reconsideration denied*, No. CV 17-3533, 2022 WL 4355818 (E.D. La. Sept. 20, 2022) ("Accordingly, if the Court finds that plaintiff cannot 'prove, at [a] minimum, that exposure to a certain level of a certain substance for a certain period of time can cause a particular condition in the general population,' then the Court's inquiry into general causation is complete." (quoting *Williams v. BP Expl. & Prod., Inc.*, No. 18-9753, 2019 WL 6615504, at *8 (E.D. La. Dec. 5, 2019) (Morgan, J.)).
[61] R. Doc. 1.
[62] R. Doc. 18.

timely filed a Motion for Extension of that, and other, deadlines, which was opposed.[63] As discussed above, the Court granted, as modified, Plaintiff's Motion seeking an extension, and allowed a thirty-day extension for Plaintiff to provide an expert report to the Defendants.[64] To the Court's knowledge, as of the date of this Order, the Plaintiff has failed to provide any such expert reports.[65] Plaintiff does not dispute that he currently does not have expert testimony establishing both general and specific causation sufficient to meet his burden. Rather, Plaintiff seeks another continuance of his expert report deadline and a denial or deferment of the Defendants' summary judgment Motion so that his expert can review certain pertinent discovery materials.

The Court has carefully reviewed Plaintiff's Motion, supporting memorandum, the accompanying affidavit of Dr. Sanu, and other attached materials and finds no basis for granting Plaintiff's Rule 56(d) Motion.[66] Plaintiff contends that information received in discovery from two of BP's contractors, Exponent and CTEH, has a direct bearing on the level of harmful exposure to toxic substances that individuals like Plaintiff experienced as a result of the *Deepwater Horizon* oil spill.[67] Plaintiff suggests that the Exponent discovery will demonstrate that the Defendants

---

[63] R. Docs. 26 and 29.
[64] *See* R. Doc. 33.
[65] The Court notes that over sixty days have passed since Plaintiff filed his Rule 56(d) Motion on May 23, 2023.
[66] Plaintiff has provided notice of supplemental authority of other cases in other courts in which the respective courts have found good cause under Fed. R. Civ. P. 16 to extend the expert report deadline for plaintiffs in other B3 and BELO lawsuits. *See* R. Doc. 50-2; R. Doc. 51-1; R. Doc. 56-1. Notably, not a single case cited by the Plaintiff concerns the granting of a Rule 56(d) motion. Given the different procedural posture and applicable standards in this matter, the Court finds Plaintiff's cited authority to be inapposite.
[67] *See* R. Doc. 50-1 at pp. 11–12.

"intentionally manufactured scientific doubt in the 'dose' data and secondary publications related to the science of the Deepwater Horizon Oil Spill as part of a litigation strategy."[68] Further, Dr. Sanu explains the alleged flaws with BP's and Exponent's sampling analysis and asks that the Court allow him more time to review the Exponent data to construct a "more accurate picture [sic] toxic pollutant exposures as a result of the Deepwater Horizon Oil Spill response."[69]

As this Court has previously pointed out, Plaintiff's argument misses the mark because a general causation analysis does not depend upon particular sampling taken from the incident in question.[70] Rather, a general causation expert is allowed to consult the entire universe of relevant epidemiological studies to support their opinion.[71] Plaintiff, after all, "was not prevented from consulting the relevant scientific and medical literature on the harmful effects of oil to determine whether a relevant chemical has the capacity to cause the harm alleged by plaintiff in the general population."[72] All of Plaintiff's arguments pertaining to the Exponent discovery material concern the accuracy and reliability of the sampling data taken by the Defendants after the *Deepwater Horizon* oil spill. Even if Plaintiff's contentions are correct, Plaintiff still fails to properly establish "'the harmful level of exposure to a chemical' at which physical symptoms manifest[,]"[73] one of the "minimal facts

---

[68] *See id.* at p. 15.
[69] *See* R. Doc. 50-3 at ¶ 26.
[70] *See Byrd*, 2023 WL 4046280, at *2.
[71] *See Heathington v. BP Expl. & Prod. Inc.*, No. CV 17-4353, 2022 WL 2986490, at *4 (E.D. La. July 28, 2022) (Barbier, J.) ("Notably, this [general causation] inquiry does not depend upon environmental sampling data taken as part of the incident.").
[72] *Dawkins*, 2022 WL 2315846, at *8.
[73] *Allen*, 102 F.3d at 199.

necessary to sustain the plaintiff's burden in a toxic tort case."[74]  For example, Plaintiff argues that the "impending Exponent and CTEH discovery will be crucial for [Dr. Sanu's] calculation of the Plaintiff's dose and necessary for [Dr. Sanu's] ability to assess reliability of the data."[75]  But this argument pertains to *specific* causation, not general causation.  As the Fifth Circuit recently explained, "[e]xposure data collected (or not) from the incident almost always bears on *specific* causation . . . [i]t does not bear on whether, per the scientific literature, exposure to a chemical can cause a specific injury in the *general population*."[76]

Accordingly, because Plaintiff fails to demonstrate how additional time to review the Exponent discovery has any bearing on his obligation to provide an admissible general causation expert report, Plaintiff has not shown how any "emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."[77]  For that reason, the Court denies Plaintiff's Rule 56(d) Motion to deny or defer ruling on Defendant's Motion for Summary Judgment.  The Court will not prolong this matter without any showing that Plaintiff is able to produce a general causation expert report that meets the *Daubert* standards for reliability.

Without expert testimony, which is required to prove general causation,[78] Plaintiff has failed to demonstrate a genuine dispute of material fact regarding his

---

[74] *Allen*, 102 F.3d at 199; *accord McGill v. BP Expl. & Prod., Inc.*, 830 Fed. Appx. 430, 433 (5th Cir. 2020) (affirming exclusion of expert's opinions where "none [of the studies on which the expert relied] provide conclusive findings on what exposure level of Corexit is hazardous to humans.").
[75] R. Doc. 50-1 at p. 10 n.34.
[76] *Byrd*, 2023 WL 4046280, at *2.
[77] *Id.* (quoting *Raby*, 600 F.3d at 561 (quotations and citation omitted)).
[78] *See, e.g.*, *Perkins v. BP Expl. & Prod.*, No. 17-4476, 2022 WL 972276, at *2 (E.D. La. Mar. 31, 2022) (Milazzo, J.) ("In a toxic tort suit such as this one, the plaintiff must present admissible expert testimony to establish general causation as well as specific causation.").

claims that his injuries were caused by exposure to oil. "When a plaintiff has no expert testimony to prove his medical diagnosis or causation at trial, the plaintiff's suit may be dismissed at the summary judgment stage."[79] Thus, Defendants' Motion for Summary Judgment must be granted as Defendants are entitled to judgment as a matter of law due to Plaintiff's failure to establish general causation.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Amended Rule 56(d) Motion to Deny or Defer Briefing on BP's Motion for Summary Judgment[80] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment[81] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants are **DISMISSED with prejudice**.

New Orleans, Louisiana, August 4, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[79] *Williams v. BP Expl. & Prod., Inc.*, No. 18-9753, 2019 WL 6615504, at *11 (E.D. La. Dec. 5, 2019) (Morgan, J.).
[80] R. Doc. 50.
[81] R. Doc. 40.